

Federal Court     Cour fédérale

**Date: 20130905**

**Docket: IMM-5277-13**

**Citation: 2013 FC 936**

**BETWEEN:**

**CANADA (MINISTER OF PUBLIC SAFETY
AND EMERGENCY PREPAREDNESS)**

**Applicant**

**and**

**MATTHEW PAUL DEHART**

**Respondent**

**REASONS FOR JUDGMENT**

**HENEGHAN J.**

[1]     The Minister of Public Safety and Emergency Preparedness (the "Applicant") seeks judicial review of the decision of K. Henrique of the Immigration Division of the Immigration and Refugee Board (the "Board") dated August 7, 2013. In that decision, the Board ordered that Matthew Paul DeHart (the "Respondent") be released from detention on terms and conditions pending the outcome of his admissibility hearing under section 44 of the *Immigration and Refugee Protection Act*, S.C. 2001, c. 27 (the "Act").

Case 3:10-cr-00250    Document 196-1    Filed 01/10/14    Page 1 of 16 PageID #: 985

[2]     At the request of the parties, a Judgment was issued on September 3, 2013, indicating that Reasons would follow.

[3]     Although a Confidentiality Order was issued by Justice Zinn on August 15, 2013, upon the hearing of a motion to stay the release of the Respondent, that Order was lifted upon the hearing of this application for judicial review. Counsel for both parties were invited to make submissions on the point. Although Counsel for the Applicant requested that it remain in place, Counsel for the Respondent expressed the view that it was not necessary. The interests of the Respondent are more persuasive that those of the Applicant and in keeping with the general principle that court proceedings in Canada take place in public, in the exercise of my discretion, the Confidentiality Order was vacated.

Background

[4]     The Respondent is a citizen of the United States who entered Canada with his parents, Paul and LeeAnn DeHart on April 3, 2013. All three claimed refugee protection upon their entry to Canada on the basis that the Respondent had been tortured by authorities in the United States and feared persecution if returned.

[5]     On October 6, 2010, the Respondent was indicted in Tennessee for production and transportation of child pornography. The Applicant's home had been searched and his computer seized on January 25, 2010. He was stopped and detained on August 6, 2010, by American officials when he was crossing from Canada to the United States at Calais, Maine. He alleges he was

drugged, subjected to psychological torture and questioned by FBI agents in relation to national security matters.

[6]     During his detention the Respondent was diagnosed with a psychotic break and has since exhibited signs of Post Traumatic Stress Disorder. He claims that this was a result of the torture he experienced.

[7]     The Respondent was detained in Maine until October 2010. He was ultimately released from custody in Tennessee on May 22, 2012, subject to conditions with his parents posting as security for his release two automobiles that they owned and his grandmother posting equity in her house in Indiana. He remained on pre-trial release until April 4, 2013, when he failed to appear for a status conference and detention review hearing related to his case. A bench warrant issued for his arrest after the Respondent left the United States and entered Canada.

[8]     The Respondent alleges that he has been a member of the online hacker group Anonymous since it was founded. As a result, he was privy to what he believes is a leaked government document relating to the national security of the United States. He claims that the child pornography investigation is a cover for the United States government to attempt to retrieve this document from him and investigate him for espionage. This is the basis for his fear of persecution; he believes this was the reason for his interrogation and torture in August 2010.

[9]     On April 4, 2013, the Respondent was arrested by Canada Border Services Agency on the grounds that his refugee claim was suspended pending an admissibility hearing under subparagraphs 34(1)(a) and 36(1)(c) of the Act.

[10]    At the first detention review hearing on April 8, 2013, the Respondent was ordered detained pursuant to subparagraphs 58(1)(a) and 58(1)(b) of the Act, namely on the grounds that he was a danger to the public, his charge being a sexual offence falling under subsection 246(f) of the *Immigration and Refugee Protection Regulations*, S.O.R. 2002-227 (the "Regulations") and that he was unlikely to appear for future immigration proceedings. The Board noted that detention was warranted as he was a danger to the public due to the serious nature of the child pornography offences and the allegations of espionage, and his history of violating court orders. It also found that the Respondent had not presented an alternative to detention nor was there any indication that he faced a lengthy detention.

[11]    A second detention review hearing was held on April 15, 2013. The Respondent requested that he be released on his own recognizance pending his admissibility hearing. The Board rejected this as an alternative to detention, stating that the Applicant posed a danger to the public and was unlikely to appear for further proceedings. It noted that the Respondent's case was recent and the Minister of Citizenship and Immigration (the "Minister") ought to be given a reasonable amount of time to prepare its case against him, and given his failure to appear in the United States, detention was a better option than release at this time.

[12]    A third detention review hearing was held on May 13, 2013. The Board again confirmed that the Respondent poses a danger to the public and is unlikely to appear for further proceedings. The Board repeated that the Respondent's fear of being returned to his home country increased the likelihood that he would fail to appear for future proceedings. The Board again found that his detention was unlikely to be lengthy.

[13]    Although the Respondent proposed that he be released and that a church in Toronto would provide a residence for him and financial support, the Board rejected this alternative as it did not address the concerns regarding the danger he posed to the public or his risk of flight.

[14]    The next detention review hearing was held on June 12, 2013. The Board restated the concerns about the danger to the public posed by the Respondent and the likelihood he would not appear for future proceedings. His detention was continued.

[15]    On this date, the Board noted that his detention was becoming lengthy, and he was facing a lengthy period of future detention. It expressed concern that there had been no disclosure package from the Minister as of the date of the hearing, and requested the Minister to advise when it would be ready. The Board suggested to the Respondent that he retain legal counsel to help him in this matter and that he propose a substantial release plan for his next detention review hearing.

[16]    The Respondent's fifth detention review hearing took place on July 10, 2013. The Board relied on the same reasons as in the previous decisions and continued his detention. The Board noted that hearing dates were set for the Respondent's admissibility hearing and his refugee

protection claim, and these would take place shortly. The Board noted that the Respondent was working on a substantial release proposal, however, the five thousand dollar performance bond offered by the parents did not satisfy the Board's concerns. Due to the fact that the two hearings were due to take place fairly close together and with regard to the previous reasons of the Board, the Respondent's detention was continued.

Decision Under Review

[17]    The Respondent's next detention review hearing was held on August 7, 2013. Board Member Karina Henrique, in departing from the earlier decision of the Board, authorized his release subject to conditions. The Board found, as clear and compelling reasons for this departure, the potential that the Respondent's future detention will be lengthy and that a substantial release plan had been submitted by the Respondent. She found that the conditions adequately addressed the concerns that the Respondent posed a danger to the public and was unlikely to appear in the future.

[18]    The Respondent's parents were to post a $10,000.00 cash deposit, and the Respondent was to be the subject of GPS monitoring during his release. The monitoring is to be paid for by his parents. They were required to pre-pay for six months of monitoring to address the Minister's concerns about the adequacy of their funds. The GPS monitoring is to ensure that the Respondent complies with the condition that he remain under house arrest 24 hours a day, 7 days a week, save to attend weekly check-ins with Canada Border Services Agency and to attend hearings related to his immigration matter. Whenever the Respondent leaves his parents' residence, he is to be accompanied by them. Finally, as a condition of his release the Respondent is not to have access to

the internet, nor any electronic devices that can connect to the internet, including computers or cell phones with a data plan.

[19]    The Board acknowledged the seriousness of the charges faced by the Respondent but also noted that now, these are allegations and he is presumed innocent. Being satisfied with the release plan submitted by the Respondent, the Board ordered he be released from detention, subject to the conditions set out in its order.

Submissions

i) Applicant's Submissions

[20]    The Applicant argues that the Board erred in accepting the Respondent's parents as bondspersons. He says that they are unsuitable, for several reasons.

[21]    First, the Applicant refers to paragraph 47(1)(a) of the Regulations and submits that since the parents defaulted on their guarantee in the United States, they are ineligible to act as bondspersons.

[22]    Further, the Applicant argues that the Board unreasonably accepted that the parents could ensure compliance with the terms of the Respondent's release. He submits that the conduct of the parents in accompanying the Respondent to Canada shows that they support him and believe that he is not guilty of the charges against him in the United States. The Applicant further argues that the conduct of the parents demonstrates a willingness to forfeit property that has been posted as security and to help the Respondent to evade a Court order in the United States.

[23]     The Applicant then argues that the Board unreasonably found that electronic monitoring adequately addressed the concerns identified in paragraphs 58(1)(a) and (b) of the Act, that is that the Respondent is a danger to the public and unlikely to appear for proceedings under the Act.

[24]     He submits that the GPS monitoring plan is not sufficiently specific and accordingly that it is unreasonable. In this regard, the Applicant relies on the decision in *Canada (Minister of Public Safety and Emergency Preparedness) v. Berisha* (2012), 12 Imm. L.R. (4th) 321 at paras. 91-92. He says that the release plan does not say that the parents are to stay home with the Respondent at all times to ensure that he complies with the release conditions. He also complains that the plan is vague with respect to the size of the monitored zone.

[25]     Finally, the Applicant submits that the Board unreasonably and improperly engaged in speculation as criticized by the Federal Court of Appeal in *Canada (Minister of Citizenship and Immigration) v. Li*, [2010] 2 F.C.R. 433 at paras. 67 and 68. He argues that the Board can only estimate the length of future detention on the basis of the facts that exist at the time of the detention review hearing.

ii) Respondent's Submissions

[26]     The Respondent takes the position that the Board's decision meets the standard of reasonableness in all respects. In the first instance, he acknowledged that while his parents are in default of a guarantee in a foreign jurisdiction, the prohibition in paragraph 47(1)(a) of the

Regulations does not apply since there is nothing in those Regulations to say that this law applies in respect of a default that occurred outside of Canada.

[27]    In any event, the Board had evidence about the posting of security in the United States. As well, there was evidence about the money available to the parents in Canada to provide a substantial cash deposit. There was also evidence of a close relationship between the Respondent and his parents.

[28]    Furthermore, there was evidence about the character, employment history and recent occupations of the parents that supports their suitability as bondspersons.

[29]    The Board did not rely solely on the parents to ensure his compliance with the conditions of his release. The Board ordered 24/7 house arrest and a ban on access to the internet. The GPS monitoring was included to ensure that the Respondent complies with the conditions of his release. There was evidence before the Board about the functioning of the GPS.

[30]    The Respondent further submits that the Board's Order concerning the GPS monitoring was sufficiently specific. The decision in *Berisha* can be distinguished since the concerns addressed in that case do not arise here. The zone is restricted to the parents' residence and the police will be contacted if a breach of the monitored zone is detected.

[31]    Finally, the Respondent argues that the Board's consideration of the anticipated period of detention is inherently a speculative exercise. The Board's conclusion is based on its expertise and

experience in conducting detention reviews. He submits that the Board addressed the elements of paragraphs 58(1)(a) and (b) and reasonably concluded that he should be released.

Discussion and Disposition

[32]    This Application for judicial review raises the following issues:

1)      What is the appropriate standard of review?

2)      Was the Board's decision that the Respondent's parents could act as bondspersons unreasonable?

3)      Was the Board's determination that electronic monitoring adequately addressed the section 58 concerns unreasonable?

4)      Was the Board's speculation about the future length of the Respondent's detention unreasonable?

[33]    The decision in issue here was made pursuant to subsection 58(1) of the Act. Paragraphs 58(1)(a) and (b) are relevant and provide as follows:

| | |
|---|---|
| 58. (1) The Immigration Division shall order the release of a permanent resident or a foreign national unless it is satisfied, taking into account prescribed factors, that | 58. (1) La section prononce la mise en liberté du résident permanent ou de l'étranger, sauf sur preuve, compte tenu des critères réglementaires, de tel des faits suivants : |
| (a) they are a danger to the public; | a) le résident permanent ou l'étranger constitue un danger pour la sécurité publique; |
| (b) they are unlikely to appear for examination, an admissibility hearing, removal from Canada, or at a proceeding that could lead to the making of a removal order | b) le résident permanent ou l'étranger se soustraira vraisemblablement au contrôle, à l'enquête ou au renvoi, ou à la procédure pouvant mener à la |

|  |  |
|---|---|
| by the Minister under subsection 44(2); | prise par le ministre d'une mesure de renvoi en vertu du paragraphe 44(2); |

[34]    A decision made under section 58 involves the assessment of evidence, subject to the statutory requirements.  As such, it raises a question of mixed fact and law, and the applicable standard of review is reasonableness;  see *Dunsmuir v. New Brunswick*, [2008] 1 S.C.R. 190 at para. 51 and *Canada (Minister of Citizenship and Immigration) v. Thanabalasingham*, [2004] 3 F.C.R. 572 at para. 10. So the principal issue in this application is whether the Board's decision to release the Respondent, upon conditions including the provision of a cash deposit by his parents, was reasonable.

[35]    According to the decision in *Thanabalasingham*, a detention review is not a *de novo* hearing where a Board can make a decision without regard to prior decisions.  Rather, a detention review is essentially a "fact-based decision to which deference is shown" and where a Board is to give "clear and compelling reasons" for departing from earlier decision to detain. At para. 12, Justice Rothstein (as he then was) described what is required:

> The best way for the member to provide clear and compelling reasons would be to expressly explain what has given rise to the changed opinion, i.e. explaining what the former decision stated and why the current member disagrees.

[36]    In my opinion, the decision meets the standard of reasonableness as discussed in *Dunsmuir* at para. 47, that is, justifiable, intelligible and transparent. Further the decision demonstrates "clear and compelling reasons" for departing from the prior decisions.

[37]     The Board reasonably found that the parents could post security by means of a cash deposit. The prohibition in section 249(1)(a) of the Regulations does not apply. In the first place, there is no evidence that the parents had posted a "guarantee" in the United States. According to the Order of the United States District Court for the Middle District of Tennessee Nashville Division, dated May 22, 2012, as found in the Certified Tribunal Record, the Respondent was ordered released from detention. The Order provides, in part, as follows:

> Ordered that the defendant shall be released pending trial,
> conditioned upon the posting of security satisfactory to the Clerk of
> the Court in the two automobiles owned by the defendant's parents
> and, within thirty (30) days of the entry of this Order, the equity in
> the defendant's grandmother's house in Indiana.

[38]     There is nothing in the terms and conditions attached to this Order spelling out the circumstances in which the authorities could realize the security posted and there is no evidence in the record to show if the American authorities have taken any steps to enforce the security posted.

[39]     Furthermore, in my opinion, there is no evidence that the parents are in "default" of any guarantee. The policy manual ENF8, entitled "Deposits and Guarantees", prepared by Citizenship and Immigration Canada ("CIC") suggests that the word "guarantee" in subsection 48(1)(a) of the Act bears the usual meaning of "guarantee". In that regard, I refer to the decision of the Supreme Court of Canada in *Communities Economic Development Fund v. Canadian Pickles Corp.*, [1991] 3 S.C.R. 388 at page 413 as follows:

> A guarantee is generally a contract between a guarantor and a lender.
> The subject of the guarantee is a debt owed to the lender by a debtor.
> In the contract of guarantee, the guarantor agrees to repay the lender
> if the debtor defaults…

[40] In my view the security posted by the parents is not a "guarantee" according to Canadian Law. The Applicant has failed to show that the security is a "guarantee", so his argument about the application of paragraph 48(1)(a) cannot succeed.

[41] Furthermore, the Applicant's argument in this regard seems to me to require the extraterritorial application of the Act. This is contrary to the general principle that in the absence of clear language in legislation authorizing extraterritorial application, Canadian law applies only within Canada; see the decision in *Society of Composers, Authors, and Music Publishers of Canada v. Canadian Association of Internet Providers*, [2004] 2 S.C.R. 427 at para. 55 where Justice Binnie said "the courts nevertheless presume, in the absence of clear words to the contrary, that Parliament did not intend its legislation to receive extraterritorial application."

[42] There is no argument raised concerning the capacity of the parents to enter a contract in the province of Ontario, certainly no evidence was filed in that regard. In any event, they are providing cash and no contract is required in that regard.

[43] I turn next to the argument about the Board's finding as to the appropriateness and sufficiency of GPS monitoring.

[44] Having regard to the evidence that was before the Board on this issue, I am satisfied that this part of the decision was reasonable. A representative of the GPS monitor provider testified at the hearing. The Applicant's representative availed of her opportunities to ask questions. It was clear

from that evidence that the monitor would be programmed in such a way, with GPS utility, that a breach of conditions as to the Respondent's movements would be communicated to the police.

[45]    The witness specifically was asked by the Member how the apparatus would work if she imposed a 24-hour curfew. The witness replied "That's the most basic."

[46]    Having regard to the evidence before the Member, I am satisfied that she reasonably accepted the proposed GPS monitoring as a condition of the Respondent's release.

[47]    Finally, there is the issue whether the Board engaged in improper speculation about the length of continued detention. The Board acknowledged that, as of August 7, 2013, there is "a potential" for the Respondent to "be in detention for a long period of time". It acknowledged that he was facing an admissibility hearing that had been postponed and for which a date would be set administratively. It noted that the Respondent's refugee protection hearing was due to begin on August 22. It went on to say the following:

> However, everyone is human and people get sick, and situations arise where there is no guarantee that your refugee claim will proceed on the 22. There is no guarantee that will be concluded. There is no guarantee that a decision will be rendered that day, so that will delay the time that you have to sit in detention.

[48]    The Applicant focuses on these remarks in arguing that the Board engaged in speculation in making the decision of August 7, 2013. I disagree.

[49]    The Board reasonably considered the likely length of the Respondent's detention. In doing so, it was building upon the remarks made by previous Boards. There is a noticeable progression in

the decision of the earlier Boards, discussing the likely length of detention. In the beginning, Boards were saying that detention was unlikely to be lengthy but at the hearing on June 12, that is the hearing before Board Member Adamidis, there was a concern that detention "has begun to be lengthy".

[50]     It appears that the Board reasonably took this observation and the passage of time into account in making the decision on August 7, 2013, to release the Respondent from detention.

[51]     Overall, I am satisfied that the Board described clear and compelling circumstances for departing from the prior decisions. It reasonably accepted the parents as bondspersons in respect of a cash deposit. The Board reasonably assessed the suitability of electronic monitoring. It established a 24-hour curfew, effectively house arrest, together with the condition that the Respondent reside with his parents and notify the immigration authorities prior to any change of address.

[52]     In the result, the application for judicial review is dismissed. No serious question of general importance was proposed for certification.

"E. Heneghan"
Judge

Ottawa, Ontario
September 5, 2013

**FEDERAL COURT**

**SOLICITORS OF RECORD**

**DOCKET:**                       IMM-5277-13

**STYLE OF CAUSE:**       CANADA (MINISTER OF PUBLIC SAFETY AND EMERGENCY PREPAREDNESS) v. MATTHEW PAUL DEHART

**PLACE OF HEARING:**     Toronto, Ontario

**DATE OF HEARING:**      August 28, 2013

**REASONS FOR JUDGMENT:**   HENEGHAN J.

**DATED:**                  September 5, 2013

**APPEARANCES:**

| | |
|---|---|
| Gregory G. George | FOR THE APPLICANT |
| Jane Stewart | |
| | |
| Lily Tekle | FOR THE RESPONDENT |

**SOLICITORS OF RECORD:**

| | |
|---|---|
| William F. Pentney | FOR THE APPLICANT |
| Deputy Attorney General of Canada | |
| Toronto, Ontario | |
| | |
| Law Office of Larry Butkowsky | FOR THE RESPONDENT |
| Toronto, Ontario | |