**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

X————————————————————X

**UNITED STATES OF AMERICA,**
                    **Plaintiff,**

            **v.**

**MATTHEW DEHART,**
                        **Defendant.**

X————————————————————X

**3:10-CR-00250**

**JUDGE TRAUGER**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS**
**THE SUPERSEDING INDICTMENT**

Tor Ekeland (PHV)
Frederic B. Jennings (PHV)
Tor Ekeland, P.C.
195 Water Street
Brooklyn, NY 11201
Tel: 718.737.7264
Fax: 718.504.5417
Email: tor@torekeland.com
        fred@torekeland.com

*Pro Bono Attorneys for*
*Defendant Matthew DeHart*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 1

PRELIMINARY STATEMENT ....................................................................................... 2

BACKGROUND ........................................................................................................... 4

LEGAL STANDARDS .................................................................................................. 12

    I.     Vindictive Prosecution ........................................................................... 12

    II.    Involuntary and Unknowing Waivers.................................................... 14

    III.   Destruction of Evidence ........................................................................ 14

ARGUMENT ............................................................................................................... 17

    I.    The Indictment Should Be Dismissed Because It Is A Vindictive Prosecution ..... 17

        A.    This Is An Actual Vindictive Prosecution......................................... 18

        B.    The Indictment Should Be Dismissed Because There Is A Realistic Likelihood That This Is A Vindictive Prosecution. ...................................................................... 20

        C.    The Court Should Grant Discovery Regarding The Vindictive Prosecution ... 20

    II.    The Indictment Should Be Dismissed Because The Government Has Deleted Material, As Well As Potentially Useful, Evidence. ...................................................... 21

        A. The Deleted Evidence Was Material And Exculpatory ......................................... 22

        B. The Deleted Evidence's Materiality Was Apparent Before The Time Of Destruction .................................................................................................. 22

        C.    The Deleted Evidence is Not Reasonably Available Elsewhere ..................... 23

        D. The Government Deleted Potentially Useful Evidence in Bad Faith.................... 23

        E. Mr. DeHart's Involuntarily and Unknowingly Signed the Consent and Waiver Forms after Coercive Interrogation Without Counsel Present ................................... 25

CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Youngblood*, 488 U.S. 51 (1988) ........................................................ 14, 15, 17

*Berghuis v. Thompkins,* 560 U.S. 370 (2010) .................................................................. 14

*Brady v. Maryland*, 373 U.S. 83 (1963) .......................................................................... 15

*Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001) ................................................. 13, 14

*California v. Trombetta*, 467 U.S. 479 (1984) ............................................................ 15, 16

*Florida v. Royer*, 460 U.S. 491 (1983) .......................................................................... 14

*Michigan v. Mosley*, 423 U.S. 96 (1975) ........................................................................ 14

*Minnick v. Mississippi*, 498 U.S. 146 (1990) ................................................................. 14

*Miranda v. Arizona*, 384 U.S. 436 (1966) ..................................................................... 14

*Moldowan v. City of Warren*, 578 F. 3d 351 (6th Cir. 2009) ........................................... 16

*Monzo v. Edwards*, 281 F. 3d 568 (6th Cir. 2002) .......................................................... 17

*Moran v. Burbine,* 475 U.S. 412 (1986) ......................................................................... 14

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ........................................................... 14

*United States v. Andrews*, 633 F.2d 449 (6th Cir. 2001) ......................................... 13, 14, 20

*United States v. Adams*, 870 F.2d 1140 (6th Cir. 1989) ........................................ 12, 13, 21

*United States v. Agurs*, 427 U.S. 97 (1976) ............................................................ 15, 16

*United States v. Bagley*, 473 U.S. 667 (1985) ................................................................. 16

*United States v. Branch*, 537 F.3d 582 (6th Cir. 2008) .................................................... 15

*United States v. Dwyer*, 287 F.Supp. 2d 82 (D. Mass. 2003) ............................... 12, 13, 19

*United States v. Hernandez*, 2014 WL 2980916 (W.D. Ky. July 1, 2014) ....................... 14

*United States v. Jefferson*, 650 F. 2d 854 (6th Cir 1981) ................................................. 14

*United States v. Jobson,* 102 F.3d 214 (6th Cir. 1996) .......................................... 14, 15, 17

*United States v. Kelly*, 913 F. 2d 261, 265 (6th Cir. 1990) ............................................... 14

*United States v. Priest*, 2010 WL 373304 (E.D. Mich. Sept. 16, 2010) ..................... 19-20

*United States v. Suarez*, 263 F.3d 468 (6th Cir. 2001) .................................................... 13

*United States v. Turner*, 287 F. App'x 426 (6th Cir. 2008) (unpublished) ...................... 16

*United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)................................................ 16

*United States v. Wright*, 260 F.3d 568 (6th Cir. 2001) ......................................... 15, 16, 17

**Statutes**

18 U.S.C. § 2251 .............................................................................................................. 1

18 U.S.C. § 3146.............................................................................................................. 1

**Other Authorities**

Judy Harrison, Child porn suspect collapses in court, Bangor Daily News, Aug. 11, 2010
............................................................................................................................... 11

Mayo Clinic, "Diseases and Conditions: Tachycardia".................................................... 8

**Constitutional Provisions**

U.S. Const. Amd. 1 ........................................................................................................ 20

U.S. Const. Amd. 5 ........................................................................................................ 15

## INTRODUCTION

Defendant Matthew Paul DeHart respectfully submits this memorandum of law in support of his motion to dismiss the Superseding Indictment ("SI") with prejudice. This Court should dismiss the SI because it is based on a vindictive prosecution of Mr. DeHart for his free speech and political activities with the Internet collective Anonymous that, upon information and belief, uncovered evidence of potentially criminal activity against United States citizens by federal agencies as well as malfeasance by American and Multi-National Corporations. Additionally, the government appears to have deleted material evidence, as well as destroying potentially useful evidence in bad faith.

## PROCEDURAL HISTORY

An August 6, 2010 a Criminal Complaint (the "Complaint") was filed in the Middle District of Tennessee, Nashville Division, charging Mr. DeHart with 1 Count of of violating 18 U.S.C. § 2251(a).[1]

On October 6, 2010, a Grand Jury returned a two count Indictment against Mr. DeHart for production and transportation of Child Pornography.[2] On November 19, 2014, a Grand Jury returned the current four count SI, charging two counts of violation of 18 U.S.C. § 2251(a), one count of violating 18 U.S.C. § 2251(a)(1), and one count of violating 18 U.S.C. 3146(a)(1).[3]

---

[1] *United States v. Matthew Paul DeHart,* Criminal Complaint 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).
[2] *United States v. Matthew Paul DeHart, Indictment*, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Oct. 6, 2010) (ECF #12).
[3] *United States v. Matthew Paul DeHart*, Superseding Indictment, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #206).

1

On August 21, 2015, the Government moved to dismiss Count Two of the SI.[4]

The Government also filed a Bill of Particulars for Counts One and Two.[5]

Mr. DeHart faces a statutory maximum of seventy years in jail.[6]

## PRELIMINARY STATEMENT

The SI should be dismissed because it is based on a vindictive prosecution of Mr. DeHart because of his First Amendment free speech and political activities with the Internet collective Anonymous, during which, upon information and belief, he came across information implicating federal agencies in criminal activity against United States citizens.

Additionally, the government appears to have permanently deleted Mr. DeHart's primary Gmail account, erloesung@gmail.com (the "Gmail Account"), after assuming full control of it in the course of its espionage investigation of Mr. DeHart. When attempting to log in to Mr. DeHart's Gmail Account a message appears that the account has been permanently deleted. Upon information and belief, the Gmail Account contained material evidence unavailable elsewhere, namely server logs documenting activity from 2007 to 2009 that implicate other individuals in the Internet Chats in this case that the Government claims Mr. DeHart used to solicit child pornography ("CP"). Additionally, the Government appears to have accessed and potentially altered at least one of Mr. DeHart's other social media and email accounts (the "Accounts"). Current and prior defense counsel have been unable to access, using log-in information provided by

---

[4] *United States v. Matthew Paul DeHart*, Gov. Mot. to Dismiss Count Two of Superseding Indictment, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 21, 2015) (ECF #262).
[5] *United States v. Matthew Paul DeHart*, Gov. Bill of Particulars, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 21, 2015) (ECF #263).
[6] *Id.*

Mr. DeHart, any of the Accounts that the government took control of in August 2010. Additionally, by deleting or modifying the Gmail Account and the Accounts the Government has destroyed, in bad faith, evidence potentially useful to the Defense. This violates Mr. DeHart's constitutional right to present a complete defense under the Fifth Amendment to the United States Constitution's Due Process Clause. Therefore, this Court should dismiss the SI with prejudice.

Current defense counsel, as well as Mr. DeHart's prior defense counsel, have repeatedly asked the government for any data they have for the Accounts. After multiple inquires, the Defense was informed by the Government that the FBI only accessed one of Mr. DeHart's Gmail accounts in August of 2010 and altered nothing.[7] The government did not respond to a query as to whether other agencies or instrumentalities of the United States government had accessed or deleted any of the Accounts. Nor is there any Account data in the discovery viewed by the Defense beyond temporary browser history files that indicate that Mr. DeHart probably logged into these Accounts in the past. Defense counsel has not been able to locate the information from any other source. Thus, it appears that the government may have deleted material evidence, as well as deleting in bad faith evidence that would help Mr. DeHart's case.

On or about August 16 through the 20th 2010, towards the end of its espionage interrogation of Mr. DeHart in Maine and New Hampshire, the FBI coerced Mr. DeHart, while denying him access to his court appointed counsel, to sign forms giving the government full control of the Accounts. This was despite the fact that the government

---

[7] Email from Jimmie Lynn Ramsaur, AUSA, to Defense Counsel (Aug. 24, 2015), attached as Ex. A.

was fully aware of the Complaint in this case, as Mr. DeHart was in custody because of his August 6, 2010 arrest based on the Complaint. This made it apparent that the Accounts contained material and potentially useful evidence for the Defense. These consent forms are not valid because Mr. DeHart was in no condition to knowingly and voluntarily to grant consent given his hospitalization for an acute psychotic break during this period, his collapse in open court after his Federal Rule of Criminal Procedure 5 hearing, and the coercive nature of his repeated interrogation regarding national security matters without counsel present. And even if the consents and waivers were valid, they provide no justification for the deletion of material and possibly useful evidence.

## BACKGROUND

Upon information and belief, from at least 2003 until his arrest, Mr. DeHart was affiliated with the Internet activist group "Anonymous", and was a system administrator for a communal Tor[8] server used by members of the group.[9] During the period of 2008 through 2010 files appeared on this server that among other things, implicated a federal agency in criminal activity against United States citizens, as well as documented apparent malfeasance by American and multinational companies. During this period Mr. DeHart was also part of a drone team at one of the main U.S. Drone Operation Centers in Terre Haute, Indiana, where he had access to Top Secret Information.[10] Several members of

---

[8] Tor, short for "The Onion Router," is a deep web service which allows obfuscated access to websites and access to Tor sites ending in .onion. Tor is designed in a way that permits relatively anonymous browsing.
[9] *See United States v. Matthew Paul DeHart*, Affidavit of Matthew P. DeHart at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-2)
[10] *United States v. Matthew Paul DeHart*, October 26, 2011 letter from the U.S. Office of Personnel Management at p. 4, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-12) (Showing Mr. DeHart's interim Secret clearance and his assignment to the 181st Operations Support Squadron.)

4

Anonymous were also part of Mr. DeHart's World of Warcraft guild,[11] as were Alleged

Victims #1 & 2. Mr. DeHart's involvement with Anonymous and the files that appeared

on the Tor Hidden Server he was a system administrator on would lead to his arrest and

interrogation by the FBI, including FBI Counter-Intelligence Agents from Washington,

D.C., for days without being permitted access to counsel.

Around 8:00 a.m. on August 6th, 2010, at the international border crossing in

Calais, Maine, Mr. DeHart crossed the border from Canada into the United States.

According to an unclassified FBI report (the "FBI Report"), Mr. DeHart's border

crossing set off an alert saying he "was wanted for questioning in an espionage matter."

Immigration and Customs Enforcement ("ICE") agents detained Mr. DeHart.[12]

After the ICE agents searched and seized Mr. DeHart's person and belongings,

they placed him in a detention cell. Around noon the ICE Agents handed over Mr.

DeHart to FBI Agents from Bangor, Maine. The FBI Agents took him to the border

crossing facilities at the International Avenue border crossing in Calais, Maine. The FBI

Agents did not promptly take Mr. DeHart to a Federal Magistrate Judge for a detention

hearing. Upon arrival at the International Avenue Border Crossing he was placed in

another detention cell. The FBI Report states that the FBI began interrogating Mr. DeHart

regarding national security matters at approximately 3:15 p.m.[13]

---

[11] World of Warcraft is a massively-multiplayer online role-playing game. A "guild" refers to a group of players that are voluntarily affiliated. Guilds range in size and style, from a handful of closely-affiliated friends to a massive number of relative strangers. The term "guild" is used to fit with the game's overall high fantasy theme. At times, Mr. DeHart's guild had a membership of 140 players. *See United States v. Matthew Paul DeHart*, Defendant's Motion to Suppress at p. 6, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #136).

[12] *United States v. Matthew Paul DeHart*, Unclassified FBI 302 at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 26, 2010) (ECF #123-2).

[13] *See id.*

That same afternoon the Complaint and Arrest Warrant were filed in the Middle District of Tennessee, Nashville Division, alleging a single violation of 18 U.S.C. 2251(a).[14] The charge in the Complaint alleges that "on or about January 1, 2008 and on or about August 31, 2008, in Williamson County, in the Middle District of Tennessee defendant did, knowingly employed, used, persuaded, induced, enticed, and coerced a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing or having reason to know that such visual depictions would be transported in interstate commerce . . . ."[15]

The Supporting Affidavit ("the Affidavit") to the Complaint is dated August 6, 2010, the same day as Mr. DeHart's border detention for espionage questioning, and is signed by Brett A. Kniss, Detective, Internet Crimes Against Children Task Force, Franklin Police Department, Tennessee.[16]

The Affidavit is based on an investigation begun on or about January 9, 2009, over a year and a half before the filing of the Complaint, when Detective Kniss interviewed two members of Mr. DeHart's World of Warcraft Guild about Mr. DeHart's alleged solicitation and transmission of sexually explicit pictures to and from the minors.[17]

Detective Kniss's allegations in the Affidavit are based on chat logs and email addresses that Detective Kniss alleges Mr. DeHart used to solicit sexually explicit

---

[14] *United States v. Matthew Paul DeHart*, Crim. Compl., No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).

[15] *Id.*

[16] *United States v. Matthew Paul DeHart*, Aff. of Det. Bret Kniss at p. 8, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1).

[17] *Id.* at ¶¶ 4-5.

Case 3:10-cr-00250   Document 267-1   Filed 09/14/15   Page 10 of 30 PageID #: 1278

material from the minors by pretending to be female girls in Indiana. This is despite the fact that Detective Kniss could not match Mr. DeHart's Internet Protocol Address ("IP Address") with the IP Addresses of the alleged females, because the record of the IP Address for one of the accounts did not exist.[18] It does not appear that Det. Kniss took any additional measures to confirm or deny the existence of Females #1 and #2.

Despite the seriousness of the allegations against Mr. DeHart, no arrest warrant was issued for Mr. DeHart, nor was he interviewed by anyone from law enforcement at the time.

On or about January 25, 2010, over a year later, the FBI Office in Evansville, Indiana, in conjunction with the Warrick County Sheriff's Office, executed an Indiana State Search Warrant on Mr. DeHart's residence in Newburgh, Indiana, ostensibly to search for CP.[19] Mr. DeHart's computers and computer related material were seized. Mr. DeHart was not arrested, as there was no arrest warrant accompanying the Search Warrant, despite the seriousness of the allegations.[20]

The fax timestamp on the copy of the Complaint faxed from the Middle District of Tennessee to Maine on August 9th, 2010 reads "August 6, 2010 4:00 p.m.," roughly eight hours after Mr. DeHart was detained.[21] Rather than promptly bringing Mr. DeHart before a Federal Magistrate Judge for a detention hearing based on his detention or the

---

[18] *United States v. Matthew Paul DeHart*, Mot. to Suppress, Search Warrant and Attachments at p. 14, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) May 21, 2012) (ECF #88-1).
[19] *Id.* at at p. 1, ¶ (A).
[20] *United States v. Matthew Paul DeHart*, Aff. of Bret Kniss at ¶ 11, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Aug. 6, 2010) (ECF #1); see also *United States v. Matthew Paul DeHart*, Search Warrant, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) May 21, 2012) (ECF #88-1).
[21] *United States v. Matthew DeHart*, Crim. Compl. 1:10-MJ-00140 (D. Me. Aug. 9, 2010).

Arrest Warrant, at approximately 5:20 p.m. the FBI Agents advised Mr. DeHart that he was being arrested based on the Arrest Warrant.[22] Upon information and belief, at some point that same day, the same or other unknown federal agents accessed and manipulated Mr. DeHart's cell phone.[23] That phone would later be returned to Mr. DeHart with all of its data wiped.[24]

According to the FBI Report, at approximately 6:00 p.m., two FBI Agents drove Mr. DeHart to the Penobscot County Jail, in Bangor, Maine where he was booked at approximately 7:30 p.m.[25] Upon information and belief, at some point during his detention and interrogation on August 6, 2010 Mr. DeHart was administered an unknown drug intravenously against his will. Upon information and belief, Mr. DeHart was at different times during the course of his detention from August 6-20th 2010, subject to, among other things, the administration of drugs against his will, sleep deprivation, deprivation of food and water, and naked solitary confinement.

At approximately 1:00 a.m. on August 7th, 2010, hospital records show Mr. DeHart was admitted to the emergency room of the Eastern Maine Medical Center in Bangor, Maine.[26] The ER physician's assessment was: 1) Acute Psychosis; 2) Tachycardia[27]; and 3) eye irritation (possibly from having his contact lenses in too

---

[22] *United States v. Matthew DeHart*, Unclassified FBI 302 at p. 3, 3:10-CR-00250 (M.D. Tenn. Aug. 26, 2010) (ECF #123-2).

[23] *See United States v. Matthew Paul DeHart*, Affidavit of Paul J. DeHart at p. 1, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #136-7).

[24] *See id*. at p. 2.

[25] *Id*. at pp. 4-5.

[26] *United States v. Matthew Paul DeHart, Mem. in Supp. of Mot. to Dismiss*, Exs. 1-2, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).

[27] Tachycardia "is a faster than normal hear rate at rest." Mayo Clinic, "Diseases and Conditions: Tachycardia", available at http://www.mayoclinic.org/diseases-conditions/tachycardia/basics/definition/con-20043012 (last accessed Aug. 10, 2015).

long.)[28] Additionally, the ER Physician noted that Mr. DeHart "verbalize[d] the occasional auditory hallucinations with people calling his name …."[29] The ER report stated that Mr. DeHart's symptoms were consistent with "possibl[y] drug-induced psychosis" and that the attending ER physician believed that Mr. DeHart may be experiencing "an acute psychotic break of bipolar disorder or schizophrenia."[30] Urinalysis indicated the presence of amphetamines.[31] The ER report also stated Mr. DeHart appeared "paranoid and delusional" because he told the physician that FBI agents were accusing him of espionage.[32] Before discharging Mr. DeHart into the care of "the correctional officers", the ER physician discussed "at length that the patient requires psychiatric evaluation while he is incarcerated."[33]

At around 4:30 p.m. on August 7th, 2010 the hospital discharged him into the custody of unknown federal agents who took him back to the Penobscot County Jail where, upon information and belief, he was interrogated by FBI agents over the weekend without counsel present.[34] Upon information and belief, Mr. DeHart repeatedly asked for access to legal counsel throughout the foregoing and was repeatedly denied.

Upon his return to the jail, upon information and belief, a hood was placed on his head, he was strapped into a "Submission Chair," and tased.[35]

---

[28] *United States v. Matthew Paul DeHart, Mem. in Supp. of Mot. to Dismiss*, Eastern Maine Medical Center, Emergency Department Record for Matthew DeHart, at 3, No. 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] *Id*.
[34] *Id.*
[35] A Submission Chair is a chair used to restrain a prisoner. Upon information and belief, the prison Mr. DeHart is currently in uses them as well.

On Monday, August 9, 2010, at approximately 2:00 p.m., Mr. DeHart finally had his initial appearance in front of Federal Magistrate Judge Margaret J. Kravchuk of the Federal District Court for the District of Maine, and she appointed him a Federal Defender.[36]

Upon information and belief, on Monday, August 9, 2010 two Special Agents arrived from the FBI Counterintelligence Office in Washington, D.C. The FBI continued interrogating Mr. DeHart without his counsel present, despite repeated requests by him for his counsel, between at least August 9 through 11, 2010. The focus of the interrogation was national security matters, and few if any questions were asked about the Complaint. Upon information and belief, one of the FBI Agents told Mr. DeHart that he knew he was not guilty of the charge in the Complaint. Upon information and belief, the FBI Agents questioned Mr. DeHart about the contents of his Gateway Laptop that is central to this case, his association with Anonymous, and individuals he knew when he was associated with drone teams while in the Indiana Air National Guard in Terre Haute, Indiana.

On Wednesday, August 11, 2010, at approximately 3:00 p.m., Mr. DeHart appeared in front of Magistrate Judge Kravchuk for a detention hearing on the Complaint. Judge Kravchuk ordered him detained and committed to the Middle District of Tennessee, Nashville Division, where the Complaint was pending. At the close of the hearing, according to a local newspaper report, Mr. DeHart collapsed on the courtroom

---

[36] *United States v. Matthew DeHart*, 1:10-MJ-00140-MJK-1 (D. Me. Aug. 9, 2010) (ECF #6).

floor.[37] It would be another 9 days before the government began transporting Mr. DeHart to the Middle District of Tennessee.

Upon information and belief, over the next nine days, from August 11th to the 20th, 2010, the FBI repeatedly interrogated Mr. DeHart without counsel present despite his repeated requests for counsel.

On or about August 19th, 2010, the FBI took Mr. DeHart to a detention facility in New Hampshire. Without his assigned Federal Defender or other counsel present, and despite his requests for counsel, the FBI induced Mr. DeHart to sign waivers to his right to counsel and to his Miranda rights, and to sign consent forms allowing the FBI to assume, manipulate, and alter Mr. DeHart's Accounts. Upon information and belief, Mr. DeHart's main Gmail Account, erloesung@gmail.com (the "Gmail Account") was deleted after the FBI took control of it.[38] When present and prior defense counsel have tried to access the account a message appears that the account has been deleted. The government has informed the Defense that the FBI only accessed a different Gmail account of Mr. DeHart in August 2010 two times and did not alter anything. The Government has not responded to the Defense's inquiry as to whether any other agents of the U.S. Government accessed or modified the Gmail Account. However, Defense counsel cannot access the Gmail Account, and testing shows it was deleted. Additionally, the defense is unable to access any of the other Accounts, because the passwords appear to have been changed.

---

[37] Judy Harrison, Child porn suspect collapses in court, Bangor Daily News, Aug. 11, 2010 at
    https://www.bangordailynews.com/2010/08/11/news/bangor/child-porn-suspect-collapses-in-court/
[38] *United States v. Matthew Paul DeHart, Mem. in Supp. of Mot. to Dismiss*, Exs. 1-2, 3:10-CR-00250
    (M.D. Tenn. (Nashville Div.) Nov. 19, 2014) (ECF #123-1).

11

After August 20th, 2010, Mr. DeHart was transferred to a jail in Kentucky to await arraignment and trial on the charges against him in the Middle District of Tennessee, Nashville Division.

On April 4, 2013 Mr. DeHart failed to appear. One day before, April 3, 2013, Mr. DeHart was detained at the border of Canada, where he and his family requested political asylum. He was detained by Canadian Authorities, interviewed by members of Canadian Security Intelligence Service, and his asylum application was the subject of immigration hearings. On or about February 5, 2015 the Canadian authorities denied his Asylum request and he was turned over to FBI Agents near Buffalo, New York on March 1, 2015. Eventually he was transported to Bowling Green Prison in Kentucky, where he is currently incarcerated awaiting trial in this matter.


**LEGAL STANDARDS**

I.     **Vindictive Prosecution**

A prosecution based on a retaliatory motivation is constitutionally impermissible and warrants dismissal of an Indictment if it is directed towards the exercise of a constitutionally or statutorily protected right. *See United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989); *United States v. Dwyer*, 287 F.Supp. 2d 82, 86-87 (D. Mass. 2003) (summarizing case law). The vindictiveness does not have to come directly from the prosecutor, but can come from other government agents that have animus towards a defendant and who use the prosecutor as a "stalking horse" to impermissibly punish a defendant for exercising a constitutional or statutory right. *See United States v. Dwyer*, 287 F. Supp. 2d 82, 89 (D. Mass. 2003).

Case 3:10-cr-00250   Document 267-1   Filed 09/14/15   Page 16 of 30 PageID #: 1284

A defendant may prove prosecutorial vindictiveness two ways: either through demonstration of actual vindictiveness through objective evidence that the prosecutor, on their own or at the whim of another, meant to punish the Defendant for exercising protected constitutional rights, or if the defendant establishes that there is a "reasonable likelihood of vindictiveness." *See U.S. v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001); *Bragan v. Poindexter*, 249 F.3d 476 (6th Cir. 2001); *U.S. v. Andrews*, 633 F.2d 449, 453-56 (6th Cir. 2001).

The "reasonable likelihood of vindictiveness" analysis is an objective one based on a reasonable person's view of the facts. *See Andrews*, 633 F.2d at 454 ("The standard itself, however, is an objective one-whether a reasonable person would think there existed a realistic likelihood of vindictiveness."). It does not require actual vindictiveness to exist, just the reasonable likelihood of it. *Andrews*, 633 F.2d at 454. If there is a realistic likelihood of vindictiveness that the government cannot rebut, the remedy is for the court to dismiss the vindictive charges. *See Andrews* 633 F.2d at 455.

To establish a realistic likelihood of vindictiveness, a defendant must show: (1) the exercise of a protected right; (2) that the prosecutor had a stake in deterring the exercise of the defendant's rights; (3) that the prosecutor's conduct was unreasonable; and (4) the intent to punish the defendant for the exercise of the protected right. *See U.S. v. Suarez*, 263 F.3d at 479; *Poindexter*, 249 F.3d at 482. A defendant is entitled to discovery on the issue if there is evidence of the existence of the essential elements of the defense. *See Adams*, 870 F.2d at 1146; *Andrews*, at 456; *Dwyer*, 287 F.Supp. 2d 82, 86-87 (D. Mass. 2003) (summarizing case law).

If the court finds that there is a realistic likelihood of vindictiveness, the burden shifts to the government to disprove it. *Poindexter*, 249 F.3d at 482; *U.S. v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980). If the government cannot disprove it, the vindictive charges should be dismissed. *Andrews*, at 456.

## II.      Involuntary and Unknowing Waivers

There are two components to a custodial interrogation rights waiver. First, the waiver must be voluntary, the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, it must be made with the full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986); *see also Berghuis v. Thompkins,* 560 U.S. 370, 382–83 (2010); *United States v. Hernandez*, No. 3:13-CR-00132-CRS, 2014 WL 2980916, at *8 (W.D. Ky. July 1, 2014). The influence of drugs, sleep deprivation, torture, and solitude confinement can render consent involuntary, and thus invalid. *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973); *see also United States v. Jefferson*, 650 F. 2d 854, 858 (6th Cir 1981). Moreover, once counsel is requested, interrogation must cease. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990); *Michigan v. Mosley*, 423 U.S. 96, 109-110 (1975) (J. White, concurring). A consent "given *after* unlawful treatment … is generally not valid." *United States v. Kelly*, 913 F. 2d 261, 265 (6th Cir. 1990) (emphasis in original); *see also Florida v. Royer*, 460 U.S. 491 (1983).

## III.      Destruction of Evidence

The government has a constitutional duty to preserve and provide access to evidence in a criminal case. *See Arizona v. Youngblood*, 488 U.S. 51, 55 (1988); *United States v. Jobson,* 102 F.3d 214, 218 (6th Cir. 1996). This constitutional duty follows from

*Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *See Youngblood,* 488 U.S. at 55;

*Jobson*, 102 F.3d at 218.

There are two different applicable legal standards to any 5th Amendment Due

Process destruction of evidence analysis. The standard to apply depends on the degree to

which the evidence in question helps the defense. The case law divides the evidence into

two categories: 1) Material Exculpatory Evidence; and 2) Evidence potentially useful to

the Defense. *U.S. v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

The destruction of material exculpatory evidence not reasonably available

elsewhere, if its exculpatory nature was apparent, violates the right to present a complete

defense under the 5th Amendment's Due Process Clause. *See Wright*, 260 F.3d at 570;

U.S. Const. Amend. 5. This is regardless of whether the government has acted in bad

faith. *See Brady v. Maryland,* 373 U.S. at 87; *Arizona v. Youngblood*, 488 U.S. at 57-58;

*California v. Trombetta*, 467 U.S. 479, 489 (1984); *United States v. Branch*, 537 F.3d

582, 589-90 (6th Cir. 2008). The analysis turns on whether: 1) the destroyed evidence

was material 2) the exculpatory nature of the destroyed evidence was apparent at the time

it was destroyed; and 3) the destroyed evidence is unavailable to the defendant from other

reasonably available means.

Material exculpatory evidence is evidence that creates a reasonable doubt of guilt

that otherwise would not exist. *See United States v. Agurs*, 427 U.S. 97, 112-13 (1976).

The determination is made by examination of the totality of the circumstances. *See*

*Agurs*, 427 U.S. at 109. Exculpatory evidence is material if there is a reasonable

probability that the destroyed evidence could have affected the judgment of the trier of

15

fact. *See United States v. Bagley*, 473 U.S. 667, 678-83 (1985); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873-74 (1982).

Additionally, the destroyed evidence must have possessed exculpatory value that was apparent before it was destroyed and be unavailable to the defendant by other reasonably available means. *See California v. Trambetta*, 467 U.S. at 489; *Wright*, 260 F.3d at 570-71; *see also*, *United States v. Turner*, 287 F. App'x 426, 431-32 (6th Cir. 2008) (unpublished). The executive, however, cannot turn a blind eye to evidence that's materiality is apparent by simply not looking for it. The apparent nature of material evidence does not depend on whether the Government has actually looked at it. *See Agurs*, 427 U.S. at 110 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972) ("If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it."). Otherwise, the Government could turn a blind eye towards material evidence, delete it, and argue there is no remedy for their willful deletion. *See Moldowan v. City of Warren*, 578 F. 3d 351, 388 (6th Cir. 2009) ("Where the exculpatory value of a piece of evidence is 'apparent,' the police have an *unwavering* constitutional duty to preserve and ultimately disclose that evidence." (emphasis in original)).

Whether evidence's materiality is apparent is an objective standard and not based on the subjective whim of law enforcement. Materiality is apparent where the law enforcement officer has "in their possession evidence that they know or should know 'might be expected to play a significant role in the suspect's defense.'" *Moldowan v. City of Warren*, 578 F.3d at 388-389 (quoting *California v. Trombetta*, 467 U.S. 479, 488).

16

If the evidence destroyed by the government was merely potentially useful to the defense, however, the defense must demonstrate not only that its value was apparent and that is unavailable from other sources, but that the destruction was done in bad faith. *See Arizona v. Youngblood,* 488 U.S. at 57; *Wright,* 260 F.3d at 570-71. Bad faith is established if the defense can show actual animus or a conscious effort to suppress exculpatory evidence. *United States v. Jobson*, 102 F. 3d at 218. Animus may be shown by the destruction of evidence in a manner at odds with normal practices or policies. *See id*. A conscious effort to suppress exculpatory evidence turns on the police officer's awareness of its exculpatory value at the time the potentially useful evidence was destroyed. *Monzo v. Edwards*, 281 F. 3d 568, 580 (6th Cir. 2002).

## ARGUMENT

This Court should dismiss the SI because it is based on a vindictive prosecution, where the prosecutors are being used as a "stalking horse" by agents of the United States government to punish the defendant for exercising his First Amendment rights of free speech and free association. The government's destruction of material exculpatory evidence unavailable to the defendant anywhere else also warrants the Court's dismissal of the SI with prejudice. Furthermore, this Court should dismiss the SI because of the bad faith destruction of potentially useful evidence by the Government that is unavailable elsewhere. In the alternative, Mr. DeHart requests a hearing on this motion and discovery on the issue of vindictive prosecution.

### I.     The Indictment Should Be Dismissed Because It Is A Vindictive Prosecution

The fact that the Complaint and Arrest Warrant were not issued until the afternoon of Mr. DeHart's detention for questioning on espionage is evidence that this is

a Vindictive Prosecution. The Government, overzealously concerned with the information Mr. DeHart came across and the manner in which he discovered it, chose to punish him for exercising valid First Amendment rights to free speech and political association. Mr. DeHart's affiliation with the online activist group Anonymous, and his political act of administering a Tor file server for whistleblowers are protected First Amendment actions. Alternatively, the realistic likelihood that this is a vindictive prosecution warrants this court dismissing the SI with prejudice in its entirety.

### A. This Is An Actual Vindictive Prosecution

It is indisputable that the Government only filed the Complaint in this case after Mr. DeHart was detained at the United States border for questioning related to alleged espionage, approximately two years after the alleged acts in the Complaint. The Affidavit Supporting the Arrest Warrant is signed the same day as Mr. DeHart's detention in Maine and also appears to have hastily been drafted that same day. Its text largely copies the January 2010 Supporting Affidavit to the search warrant of Mr. DeHart's home. The search warrant allegedly is based on the results of an investigation of Mr. DeHart from January 2009. Despite almost two years in which to issue a criminal complaint or Indictment, the Government did not do so until Mr. DeHart's interrogation on alleged espionage matters. This, in concert with Mr. DeHart's political acts and affiliations, shows a vindictive prosecution intended to punish Mr. DeHart.

Actual vindictiveness may be shown by producing some direct evidence that the prosecution was prevailed upon to bring charges by another with animus towards the defendant, and that the defendant would not have been charged but for that animus. Here, the actions surrounding Mr. DeHart's arrest demonstrate the animus that others placed

upon the prosecution to bring these charges. After the Government's hastily filed Complaint, Mr. DeHart was held and interrogated for many days without counsel. On information and belief, Mr. DeHart was also at various times drugged, tortured, and kept in inhumane solitary confinement by FBI agents. The first day of his interrogation resulted in his being taken to the local emergency room, where unknown drugs were found in his system. Two days later, he collapsed in open court after his Federal Rule of Criminal Procedure 5 hearing. He was repeatedly interrogated over national security issues for another ten days without counsel present, despite repeated requests for counsel. Mr. DeHart has never been charged with espionage or anything related to national security. He has instead been charged with the alleged crimes in the SI, in a vindictive response to his political activities.

Thus, Mr. DeHart's prosecution has the elements of an actual vindictive prosecution: (1) the Government harbored animus towards Mr. DeHart for his access to, and dissemination of, information in relation to his political activities with Anonymous, as evidenced by his treatment by the FBI from August 6-20, 2010 as well as his repeated interrogation by Canadian Security Intelligence Service at the request of the U.S. government, and (2) that the prosecution was prevailed on to bring the SI against Mr. DeHart only after he was detained for espionage questioning, as evidenced by the fact that the Government did not file the Complaint until after his detention for espionage questioning and over a year and a half from the initial investigation in this matter. *See Dwyer*, 287 F. Supp. 2d at 89 (stating elements of actual vindictive prosecution); *United States v. Priest*, No. 10-20197, 2010 WL 373304, at *3 (E.D. Mich. Sept. 16, 2010)

(quoting *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000), cert. denied 511

U.S. 1015 (2000)).

### B.  The Indictment Should Be Dismissed Because There Is A Realistic Likelihood That This Is A Vindictive Prosecution.

For the same reasons as above, the Court should dismiss the SI because there is a

reasonable likelihood that this is a vindictive prosecution. To meet this standard, Mr.

DeHart does not need to show that the SI was motivated by vindictiveness, only that an

objectively reasonable person looking at the totality of the circumstances would think so.

*See Andrews*, 633 F.2d at 454.  An objectively reasonable person who viewed the facts

that the Complaint was not brought until after Mr. DeHart was detained for espionage,

and then viewed the facts of his interrogation by the Government for a period of two

weeks without counsel present almost exclusively on matters of National Security and not

directly on matters related to the Complaint would conclude that there is a realistic

likelihood of vindictive prosecution in this instance. Moreover, that objective, reasonable

person's determination would be confirmed by the fact that the Government asked

Canadian Security Intelligence Service to interrogate Mr. DeHart on its behalf. This

Court should dismiss the SI on the grounds that it is motivated by animus against the

Defendant's valid First Amendment activities and associations. *See* U.S. Const. Amd. 1.

### C.  The Court Should Grant Discovery Regarding The Vindictive Prosecution

The facts in this case warrant discovery on the issue of why the Complaint in this

matter was not filed until after Mr. DeHart's detention for espionage in August of 2010,

as well as the Government's apparent display of animus towards Mr. DeHart during its,

and the Canadian government's, interrogation of him over matters of national security.

There is more than "enough smoke" here to suggest the smoldering fire of vindictive prosecution underneath, and the Defendant should be granted discovery on this issue. *See Adams*, 870 F.2d at 1146.

## II. The Indictment Should Be Dismissed Because The Government Has Deleted Material, As Well As Potentially Useful, Evidence.

Mr. DeHart has repeatedly asked the Government for discovery and information on the Accounts since at least June 21, 2012.[39] Initially, the Government stated that it had no information about the Accounts. On August 24, 2015, however, the Government informed the Defense that despite having Mr. DeHart sign consent forms to take over the Accounts, that the FBI only accessed one Gmail account, MDSicherheit@gmail.com, and that the FBI only accessed it twice in August 2010 without altering or deleting anything. Defense Counsel is unable to access this account, because the password appears to have been changed. And attempts to log into Mr. DeHart's primary Gmail Account are met with a message that the Account has been deleted.

Mr. DeHart's Gmail Account was one of his primary forms of communication on the Internet. It contained communications between Mr. DeHart, Anonymous, members of and members of his World of Warcraft Guild, including the alleged victims. It also contained some of the files that appeared on the hidden Tor Server that Mr. DeHart was a system administrator on and that the FBI Interrogated him regarding. Crucially, the Gmail Account was regularly emailed Mr. DeHart's Ventrilo Server logs which logged the IP Addresses of the individuals who chatted on it. Upon information and belief, these

---

[39] *See United States v. Matthew Paul DeHart*, Letter from AUSA Daughtrey at p. 3, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-4).

logs would demonstrate that Female # 1 and Female #2 existed and regularly interacted with Guild Member #1 and Guild Member #2.

### A. The Deleted Evidence Was Material And Exculpatory

#### i. Server Logs On The Erloesung Gmail Account Contained User Names And IP Addresses For Females #1 and #2

Upon information and belief, the Ventrilo[40] server logs are from the time period between 2007-09 when Mr. DeHart was hosting his World of Warcraft ("WoW") guild's Ventrilo server. These server logs would show the usernames, IP addresses, connection times, and disconnection times of all users who logged into the Ventrilo server. Both females whose screen names appear in the chat logs with Alleged Victims #1 and #2 would also appear in these server logs. They used the same, or very similar, screen names in the Ventrilo chat rooms. Access to the logs showing these screen names logging in from other IP addresses would support the theory that Mr. DeHart was not the one using these screen names, that they belonged to other people, and that Alleged Victims #1 and #2 regularly sexted and sent images to these female players.

### B. The Deleted Evidence's Materiality Was Apparent Before The Time Of Destruction

Detective Brett Kniss mentions Mr. DeHart's Gmail Account in his report on his initial January 2009 investigation of this matter.[41] He noted that the Gmail Account was allegedly the same account used to pay for a "spoofcard" account from an IP address associated with the DeHart family's Newburg, Indiana home. The Complaint charged Mr.

---

[40] Ventrilo is a voice-chat and instant messaging software widely used by online gaming groups. The Ventrilo server is often run on a host machine, typically the computer of one of the group's members, and players connect using the Ventrilo client. Certain vendors also offer *See generally* Ventrilo, http://www.ventrilo.com/.

[41] *See* Franklin Police Department Investigative Synopsis at p. 11.

DeHart with solicitation and transmission of CP via interstate wire, and describes the chat logs associated with those charges. As such, the Government was on notice that Mr. DeHart's Internet communications were at issue, at the earliest in January 2009 and at the latest August 6, 2010 upon Mr. DeHart's arrest upon the Complaint in Maine, which selectively focused on alleged reconstructed chats between Mr. DeHart and the Victims.

### C. The Deleted Evidence is Not Reasonably Available Elsewhere

Moreover, because Mr. DeHart was running a private Ventrilo server, no third party would have these logs. In a 2012 affidavit, Mr. DeHart says he had a backup of the logs from this email address on a computer in Canada, but the Defense has thus far been unable to locate any such logs. The Government has also not provided any logs, despite repeated requests for this exculpatory evidence.[42] There appears to be no other place to obtain these logs besides the deleted Gmail Account.

### D. The Government Deleted Potentially Useful Evidence in Bad Faith

### i. The Deleted Evidence was Potentially Useful

Even if the Court finds that the Ventrilo Server logs were not apparent material exculpatory evidence, they were in the least potentially useful evidence in that they were a record of all the chats that occurred on the Ventrilo Server Mr. DeHart administered. This evidence would be potentially useful for Mr. DeHart's defense in that it would demonstrate that the IP Addresses of for Female #1 and Female #2 were different than Mr. DeHart's. Additionally, upon information and belief, the Ventrilo logs, as well as the Gmail Account in general, would show that Alleged Victims #1 and #2 regularly

---

[42] *See United States v. Matthew Paul DeHart*, Aff. of Matthew DeHart at p. 5, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Nov. 6, 2012) (ECF #135-2)

transmitted CP to individuals other than Mr. DeHart, providing powerful grounds for reasonable doubt.

### ii. The Government Deleted the Evidence in Bad Faith as Part of its Overzealous National Security Investigation

The Government was clearly concerned about the information Mr. DeHart came across as its primary focus of its interrogations of Mr. DeHart was national security. This is obvious from the FBI Report. Additionally, on May 14, 2012 this Court reviewed classified FBI 302 reports regarding Mr. DeHart's interrogations and commented in open court that if there was evidence needed by the defense which "the government is unwilling to give … because of national security, the case will be dismissed."[43]  Indeed, after reviewing the classified FBI 302 Reports this Court released Mr. DeHart on bond and stated it had seen enough to call the evidence in this case "into question."

Towards the end of Mr. DeHart's intensive national security interrogation, the FBI took control of his Accounts, and Mr. DeHart's Gmail Account appears to have been permanently deleted, presumably to hide some aspect of the Government's use or manipulation of that account as part of its National Security investigation, or to destroy evidence or information found on that account. This Court said that it would dismiss the Indictment if it found the the National Security investigation was interfering with this case. The Government's apparent bad faith deletion of Mr. DeHart's Gmail Account is precisely such interference.

---

[43] *United States v. Matthew Paul DeHart,* Transcript of Proceedings from April 12, 2012 at p. 12, 3:10-CR-00250 (M.D. Tenn. (Nashville Div.) Jul. 4, 2014) (ECF #203).

### E. Mr. DeHart's Involuntarily and Unknowingly Signed the Consent and Waiver Forms after Coercive Interrogation Without Counsel Present

The Government did not have valid consent to access, let alone delete, these Accounts, as its consent form was obtained through coercive pressure and during an interrogation without counsel present despite Mr. DeHart's requests for counsel. On August 7, 2010, within 24 hours of his arrest, the government had to take Mr. DeHart to a local emergency room where he was diagnosed as having possibly drug induced psychosis, as well as being delusional because he informed the attending ER physician that he was being interrogated by the FBI regarding espionage matters- a claim later verified by an unclassified FBI Report.

On August 11, 2010, after his Federal Rule of Criminal Procedure 5 hearing, he collapsed in open court. Despite this, and the fact that he had a court appointed federal defender, FBI agents repeatedly interrogated him without his counsel present and coerced him into turning over control of his Accounts to the government. This coercive action by investigating agents cannot create any valid consent. Even if Mr. DeHart's consent to government control of the Accounts was valid, there is no valid justification for their apparent deletion of material evidence as well as evidence that is potentially useful to his defense.

### CONCLUSION

This vindictive prosecution should be dismissed, as the prosecutor's decision to charge was motivated by impermissible considerations of Government animus against Mr. DeHart for his political associations and activities. Moreover, this Court once said that if it found the national security investigation of Mr. DeHart had interfered with the

availability of evidence in this case, it would dismiss the Indictment. The national

security investigation has interfered with this case in just such a way, as the government

appears to have deleted evidence. Therefore, this Court should dismiss the Indictment

with prejudice in its entirety, and order anything else the means of justice may require.


DATED: September 14, 2015                    Respectfully Submitted,

                                             /s/ Tor Ekeland
                                             Tor Ekeland (PHV)
                                             Frederic B. Jennings (PHV)
                                             Tor Ekeland, P.C.
                                             195 Plymouth Street, 5th Floor
                                             Brooklyn, NY 11201
                                             Tel: 718.737.7264
                                             Fax: 718.504.5417
                                             Email: tor@torekeland.com
                                                    fred@torekeland.com

                                             *Pro Bono Attorneys for*
                                             *Defendant Matthew DeHart*